TM/ML

**13 M 885**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

EDWER BALAN,

            Defendant.

SEALED AFFIDAVIT IN
SUPPORT OF ARREST WARRANT
(21 U.S.C. §§ 331 and
353(e)(2)(A))

- - - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

      THOMAS COUNTERMINE, a Special Agent of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), being duly sworn, deposes and states the following:

      Upon information and belief, in or about and between April 2013 and October 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant EDWER BALAN, together with others, did knowingly and intentionally introduce and receive misbranded prescription drugs in interstate commerce, in violation of Title 21, United States Code, Section 331, and engage in the unlicensed wholesale distribution of prescription

drugs in interstate commerce, in violation of Title 21, United States Code, Section 353(e)(2)(A).

(Title 21, United States Code, Sections 331 & 353(e)(2)(A))

The source of my information and the grounds for my belief are as follows:

1. I am a Special Agent with HSI and have been so employed for approximately six and one-half years. I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for transnational sex and human trafficking and related offenses. In that capacity, I have participated in investigations involving the debriefing of sex trafficking victims, review of telephone records and cellular telephone location data, review of money transfer records, surveillance, analysis of pen register information, and various other techniques. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

2. I have participated in the investigation of this matter and I am familiar with the information contained in this affidavit based on my own participation in the investigation, my review of documents and records, and conversations I have had with other law enforcement agents and individuals. Because the purpose

of this affidavit is to set forth only those facts necessary to establish probable cause for the issuance of an arrest warrant for the defendant EDWER BALAN, I have not described all of the relevant facts and circumstances concerning this investigation of which I am aware.

3. On or about April 30, 2013, HSI agents went to 102-10 Larue Avenue in Queens, New York, to execute an arrest warrant for an individual in connection with a sex trafficking case. After knocking on the door of the second floor apartment, an occupant of the building at 102-10 Larue Avenue advised the agents, in substance, that the building's superintendent lived on the first floor. The agents then knocked on the door of the first floor apartment and learned that the defendant EDWER BALAN was the superintendent for the building. The agents were previously familiar with BALAN due to his having been identified in connection with sex trafficking cases as a supplier of condoms to sex trafficking organizations. At BALAN's request, the agents permitted him to contact an attorney regarding his immigration status and in regards to the agents' request that HSI be permitted to search his apartment.

4. After speaking with an attorney, BALAN signed a written consent to search. During the search, BALAN allowed the agents access to the basement, where they found several pallets of condoms, a T-shirt advertising a brand of condoms, and a large

quantity of what appeared to be birth control pills labeled "Nordette."

5. The HSI agents then placed BALAN under administrative arrest due to his lack of lawful immigration status. Thereafter, during a post-arrest interview, BALAN was advised of his Miranda rights in Spanish and English. BALAN stated that he understood those rights and agreed to waive them in writing. During the subsequent interview, BALAN stated that he was illegally present in the United States, and that he had paid to be smuggled into the United States. In addition, he stated that he owns a condom distribution business, and that he has a patent on a brand of condoms called "Momentos Classico." BALAN further stated that he also sells the condom brands "Crown" and "Fantasies." BALAN also stated that he sells contraceptive pills, but that he does not have a license to do so. BALAN also stated that his cellular telephone number was (347) 236-0629. BALAN was later released from administrative detention.

6. In mid-August 2013,[1] a Special Agent of HSI, who is a fluent Spanish speaker, placed a consensually-recorded call to BALAN's cellular telephone bearing number (347) 236-0629. During the call, the Special Agent, who is female, requested to purchase "chocolates" (a reference to condoms) and "Jasmine" (a reference to

---

[1] The exact dates of the meetings between the confidential informant discussed below (the "CI") and BALAN are not specified so as to protect the identity of the CI.

4

a specific type of birth control pill). BALAN indicated that he did not have any "Jasmine," so the Special Agent asked if she could purchase Nordette. BALAN agreed. In a subsequent telephone call, the Special Agent indicated that she was going to send someone else to meet BALAN. HSI Special Agents equipped a confidential informant ("CI")[2] with a consensual recording device[3] and U.S. currency, and directed the CI where to meet BALAN. The CI was then surveilled on the CI's way to the meeting location in the vicinity of 43rd Avenue and 111th Street in Queens, New York. After the meeting, the CI stated, in substance and in part, that BALAN asked the CI which type of condoms he wanted to purchase. When the CI stated that the CI wanted the "platinum" ones, BALAN reached into the back seat of his vehicle and pulled out a black plastic bag that contained a zip-lock bag full of condoms and a roll of paper towels. BALAN then took two yellow envelopes out of a plastic storage bin located on the front passenger seat of the vehicle, and placed them into the black plastic bag containing the condoms and paper towels. The CI asked BALAN,

---

[2] By way of background, the CI has been working as a paid confidential informant for HSI for over seven years, and information provided by the CI has been corroborated by other independent evidence including but not limited to surveillance, consensual recordings and wiretap interceptions. The information provided by the CI has been used by HSI in the past to make arrests and apply for wiretap interceptions. The information provided by the CI has thus proven to be reliable.

[3] Despite having provided the CI with a recording device, the meeting between the CI and BALAN in mid-August was not captured due to a technical difficulty.

in substance, if the CI could provide BALAN's telephone number to other potential customers for condoms and/or birth control pills, to which BALAN agreed. The CI further advised that BALAN charged the CI $62 for 144 "Crown" condoms and 2 packages of Nordette birth control pills. The CI also described BALAN's vehicle as a black sedan with a yellow New York license plate and that the CI believed that the last 4 digits of the license plate were 8811.

7. An inspection of the pills purchased from BALAN in mid-August revealed that the pills were contained in yellow envelopes with white stickers labeled "Nordett" on the outside. Each envelope contained one unopened package of birth control pills, which in turn contained 21 pills.

8. Thereafter, in late August 2013, at the direction of law enforcement, the CI made arrangements to meet with BALAN. After equipping the CI with a recording device and U.S. currency, HSI agents conducted surveillance of the CI proceeding to the location where the CI was to meet BALAN, which was at the intersection of 43rd Avenue and 111th Street in Queens, New York. Once there, the CI received a telephone call from BALAN, who instructed the CI to go to the parking lot of an auto repair shop at the intersection of 43rd Avenue and 111th Street in Queens, New York. The CI then proceeded to that location. During the meeting between the CI, BALAN and a female who was sitting in BALAN's vehicle, the CI purchased additional condoms and birth control pills. Specifically, during the conversation,

6

BALAN had a black plastic bag on his lap when the CI approached the vehicle. BALAN, in substance, confirmed the order with the CI, indicating that the bag contained the same items the CI had purchased in mid-August. The CI observed that the bag contained a white plastic bag that contained condoms packaged in pink and yellow wrappers, in addition to yellow envelopes. The CI advised BALAN that the CI did not want the colorful condoms, but he wanted the "Crown" condoms that the CI had purchased two weeks prior. The CI then observed BALAN remove the white plastic bag of condoms and place it in the rear seat area of his vehicle. The CI then observed BALAN reach into the back seat area of his vehicle and pull out a black plastic bag that contained several "Crown" condoms. Based on a review of the consensual recording,[4] the CI also asked BALAN if he had any "Plan B" and "Jasmine" available,[5] and what other type of medication he had for sale, in response to which BALAN stated that he had Microgynon. The CI indicated that the CI would take a package. The CI observed BALAN reach into the back seat of the vehicle and remove a plastic storage bin that contained yellow envelopes. The

---

[4] The conversation that occurred between BALAN and the CI at this meeting was conducted in the Spanish language. My understanding of the conversation is based on a summary draft translation prepared by a Spanish interpreter, which translation is subject to revision.

[5] Based on my training and experience, I understand "Plan B" to refer to a medication that can cause a medically-induced abortion and "Jasmine" to refer to specific type of birth control pill, namely "Yasmin," which is manufactured by the Bayer pharmaceutical company.

CI observed BALAN reach into the storage bin and remove yellow envelopes, which BALAN placed into the black plastic bag that BALAN originally had on his lap when the CI approached the vehicle. The CI observed that there were several black plastic bags on the backseat of BALAN's vehicle, and that many of the bags appeared to have something in them. During the meeting, the female sitting in the front seat of BALAN's vehicle provided the CI with various prices for the condoms and different birth control pills. She stated, in substance, that the packages of Nordette cost $20 and that a package of Microgynon costs $15.

      9. An HSI Special Agent who was conducting surveillance of the meeting in late August between the CI and BALAN observed the CI approach a Black 4-door Mazda sedan in the parking lot of the auto repair shop. In the vehicle, the Special Agent observed two occupants, including a Hispanic male in the driver's seat, who appeared to be BALAN. The license plate affixed to BALAN's vehicle was a New York license plate bearing number GFW 8811.

      10. An inspection of the pills purchased from BALAN in late August revealed that the pills were contained in yellow envelopes with white stickers labeled "Nordett" and "Microgynon" on the outside. Each envelope contained one unopened package of birth control pills, which in turn contained 21 pills.

      11. In early October 2013, HSI agents conducted surveillance of BALAN and arranged for another meeting between BALAN

8

and the CI. Specifically, at approximately 11:29 a.m., the same female Special Agent discussed above spoke with BALAN over the telephone and asked to purchase "chocolates" (condoms) and Nordette birth control pills. In substance, BALAN agreed to the sale and to meet at the corner of 43rd Avenue and 111th Street in Queens, New York. At approximately 11:38 a.m., an HSI Special Agent observed BALAN exit the front door of 102-10 Larue Avenue and enter his vehicle. After entering the vehicle, BALAN left the vehicle and went back into the building. At approximately 11:43 a.m., the HSI Special Agent observed BALAN exited the building carrying a black plastic bag, and reenter his vehicle. The Special Agent then observed BALAN place the black plastic bag into the rear seat of his vehicle. At approximately 11:45 a.m., another special agent observed BALAN leave the vicinity of his residence. At approximately 11:55 a.m., the CI received a telephone call from BALAN indicating that he was close. The CI told BALAN that he was near the bodega. Special Agents then observed BALAN pull up to the intersection of 43rd Avenue and 111th Street directly in front of the bodega and engage the CI in conversation. At approximately 11:58 a.m., BALAN was observed departing from the location. In addition, the CI was observed leaving from the meeting location, and carrying a black plastic bag.

12. The CI, who was equipped with a consensual recording device during the meeting, has advised that the following occurred, in substance, during the meeting in early October 2013. The CI told

9

BALAN that the CI had to purchase condoms from "Jose" because BALAN was in Connecticut the previous week. BALAN inquired what "Jose" charged, to which the CI stated that Jose had charged $28. BALAN stated that $28 was too expensive, and that BALAN supplies several other distributors working in Queens. BALAN also stated, in substance, that if the CI needed something delivered out of state, all the CI would need to do is pay BALAN here and provide him with a good address. BALAN stated that he would ship the order to other states. During the meeting, the CI observed several black plastic bags, which appeared to contain items, in the back seat of BALAN's vehicle. While BALAN and the CI were speaking, the CI observed BALAN reach into the back seat of the vehicle and grab a black plastic bag that contained a package of condoms. The CI also observed BALAN pull a plastic storage bin from the back seat, which bin contained several yellow envelopes. BALAN pulled three yellow envelopes out of the bin. Two of the envelopes were labeled on the outside, but one was not; the CI observed BALAN open the envelope, apparently to confirm that the contents were in fact Nordette. BALAN informed the CI that he would accept $80 for everything.

13. An inspection of the items purchased from BALAN in late August revealed one Zip-lock package of "Crown" latex condoms and three packages of Nordette birth control pills that were contained in yellow envelopes.

14. Following the consent search in April 2013, HSI has been in contact with representatives of Pfizer, the pharmaceutical company that manufactures Nordette. Based on the lot numbers associated with the pills seized in April 2013, a Pfizer representative has advised HSI, in substance, that the pills were manufactured in Brazil for the Venezuela market. In addition, a representative of the U.S. Food and Drug Administration has advised that based on his review of the packaging, the pills are not approved for distribution in the United States. Specifically, the packaging is in a foreign language, it does not bear the required label "Rx" and it does not bear a National Drug Code (or "NDC"), which is required for all pharmaceuticals to be sold legitimately within the United States.

15. HSI has determined that the consent search in April 2013 yielded approximately 367 packages of "Nordette," which contained approximately 7,707 pills. In addition, the undercover purchases detailed herein yielded 42 pills of Nordette in mid-August, 42 pills of Nordette in late August, 63 pills of Nordette in early October and 21 pills of Microgynon in late August. Based on the length of time that BALAN has been engaged in the distribution of birth control pills, the quantity of pills recovered in the April 2013 consent search and subsequent purchases, and BALAN's stated willingness to ship birth control products to other states, there is probable cause to conclude that BALAN is engaged in the unlawful

11

introduction and receipt of misbranded prescription drugs in interstate commerce and unlicensed wholesale distribution of prescription drugs.

16. Due to the confidential nature of the information contained in this affidavit and to avoid the flight of targets, witness tampering, destruction of evidence and obstruction of justice that could result from the public filing of this application in advance of BALAN's arrest, I respectfully request that this affidavit and the accompanying warrant be filed under seal.

\* \* \* \* \*

WHEREFORE, I respectfully request that an arrest warrant be issued so that the defendant EDWER BALAN may be dealt with according to law.

THOMAS COUNTERMINE
Special Agent
Homeland Security Investigations

Sworn to before me this
17th day of October 2013

s/Scanlon

HONORABLE
UNITED STA
EASTERN DI.......

12